**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 0:17-cv-62317-JIC

BBX CAPITAL CORPORATION, formerly
BankAtlantic Bancorp, Inc.,

          Plaintiff,

   v.

FEDERAL DEPOSIT INSURANCE
CORP., in its corporate capacity, and
BOARD OF GOVERNORS OF
THE FEDERAL RESERVE BOARD,

          Defendants.

_____/


**FDIC'S RESPONSE IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


ERIK BOND
Counsel
SARAH FAUST
Attorney
Federal Deposit Insurance Corporation
General Litigation Section
Corporate Litigation Unit
3501 N. Fairfax Drive, D-7026
Arlington, VA 22226
Telephone: (703) 562-6461

*Attorneys for Defendant*
*Federal Deposit Insurance Corporation*

Dated:  September 13, 2018

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

GOLDEN PARACHUTE RESTRICTIONS  AND FEDERAL OVERSIGHT OF
    BANKING ...........................................................................................................4

    A.     Federal Oversight of Financial Institutions in "Troubled" Condition ....................4

    B.     FDIC Golden Parachute Restrictions When a Bank Is in "Troubled"
    Condition...........................................................................................................5

FACTUAL AND PROCEDURAL BACKGROUND....................................................6

    A.     BankAtlantic's Troubled Condition and BB&T's Stock Purchase........................6

    B.     The Former Executives, the SPA, and the Proposed Payments.............................7

    C.     The FDIC's Administrative Process .......................................................................8

STANDARD OF REVIEW .........................................................................................9

ARGUMENT .............................................................................................................10

I.     THE FDIC'S DETERMINATIONS THAT THE GOLDEN PARACHUTE
    RESTRICTIONS APPLY TO THE PROPOSED PAYMENTS ARE PROPER. ............10

II.    THE FDIC BASED ITS FINAL DETERMINATIONS ON PERMISSIBLE
    FACTORS, CONSIDERING EVIDENCE SUBMITTED TO THE AGENCY...............13

    A.     The FDIC Considered the Certification Factors. ....................................................13

    B.     BBX Does Not Challenge the FDIC's Other Findings, Which Provide
    Independent Grounds to Support the Final Determinations. ..................................14

III.   THE FDIC ADVANCES A CONSISTENT INTEPRETATION OF PART 359............17

IV.   THE FDIC'S REQUEST THAT BB&T ALSO SUBMIT AN APPLICATION IS
    BASED ON A CONSISTENT APPLICATION OF THE GOLDEN
    PARACHUTE RESTRICTIONS. ...................................................................................18

V.    THE FDIC'S ACTIONS COMPORTED WITH DUE PROCESS. .................................19

VI.   BBX'S DELAY CLAIM AGAINST THE FDIC IS MOOT............................................19

CONCLUSION..........................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Air Line Pilots Ass'n, Int'l v. DOT*
  791 F.2d 172 (D.C. Cir. 1986) ........................................................................... 15

*Batchelor v. Cornerstone Bank*
  No. 5:13-CV-78-D, 2013 WL 5309578 (E.D.N.C. Sept. 19, 2013) ........................ 5

*Branch v. United States*
  69 F.3d 1571 (Fed. Cir. 1995) ............................................................................. 4

*City of Arlington, Tx. v. FCC*
  569 U.S. 290 (2013) ............................................................................................ 13

*Confederated Tribes of Grand Ronde Cmty. of Oregon v. Jewell*
  No. CV 13-849 (BJR), 2014 WL 7012707 (D.D.C. Dec. 12, 2014) ...................... 14

*Ctr. for Auto Safety v. Peck*
  751 F.2d 1336 (D.C. Cir. 1985) ................................................................... 16, 18

*Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*
  53 F.3d 1395 (4th Cir. 1995) .............................................................................. 19

*Fahey v. Mallonee*
  332 U.S. 245 (1947) .............................................................................................. 4

*Federal Express Corp. v. Holowecki*
  552 U.S. 389 (2008) ............................................................................................ 14

*Harrison v. Ocean Bank*
  614 F. App'x 429 (11th Cir. 2015) ....................................................................... 5

*Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*
  731 F. Supp. 2d 15 (D.D.C. 2010) ...................................................................... 18

*Hill v. Commerce Bancorp, Inc.*
  2012 WL 694639 (D.N.J. Mar. 1, 2012) ......................................................... 11, 12

*Hi-Tech Pharmacal Co. v. FDA*
  587 F. Supp. 2d 13 (D.D.C. 2008) ........................................................................ 9

*Long Island Care at Home, Ltd. v. Coke*
  551 U.S. 158 (2007) ............................................................................................ 13

*Lorion v. NRC*
  785 F.2d 1038 (D.C. Cir. 1986) ........................................................................... 16

*Mathews v. Eldridge*
  424 U.S. 319 (1976) ............................................................................................ 19

*Natural Res. Def. Council v. Nat'l Marine Fisheries Serv.*
  No. 12-CV-0938 (KBJ), 2014 WL 5148407 (D.D.C. Oct. 14, 2014) ................... 16

*Quality Auto. Servs., LLC v. Pension Ben. Guar. Corp.*
  960 F. Supp. 2d 211 (D.D.C. 2013) ..................................................................... 16

*Riegel v. Medtronic, Inc.*
  552 U.S. 312 (2008) ............................................................................................ 14

*Rohr v. Reliance Bank*
  826 F.3d 1046 (8th Cir. 2016) .............................................................................. 5

*Talk Am. Inc. v. Mich. Bell Tele. Co.*
  131 S.Ct. 2254 (2011) ......................................................................................... 13

*WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*,
  110 F. Supp. 3d 44 (D.D.C. 2015) ................................................... 3, 14, 15, 17

**Statutes and Rules**

12 U.S.C. § 1823(c) ................................................................................................ 4
12 U.S.C. § 1828(k) ..................................................................................... passim
12 U.S.C. § 1828(k)(1) ........................................................................................... 2
12 U.S.C. § 1828(k)(2)(B)(i),(ii) ........................................................................ 11
12 U.S.C. § 1828(k)(4)(A) ..................................................................................... 2
12 U.S.C. § 1828(k)(5)(D) .................................................................................. 10
12 U.S.C. § 1831*o* ................................................................................................ 4
5 U.S.C. § 706(2)(A) .......................................................................................... 3, 9
Fed.R.Civ.P. 12(b)(1) ........................................................................................... 20

**Code of Federal Regulations**

12 C.F.R. § 303.101(c) ........................................................................................... 4
12 C.F.R. § 359.1(f) ............................................................................................. 18
12 C.F.R. § 359.4(a) ............................................................................................... 5
12 C.F.R. § 359.4(a)(1) ........................................................................................ 17
12 C.F.R. § 359.4(a)(3) ................................................................................... 17, 18
12 C.F.R. § 359.4(a)(4) .......................................................................... 6, 13, 14
12 C.F.R. § 359.4(b) ............................................................................................ 17
12 C.F.R. § 359.4(b)(3) ....................................................................................... 16
12 C.F.R. §§ 359.4(b)(1)-(3) ....................................................... 3, 13, 15, 16
12 C.F.R. 359 ............................................................................................... passim

**Federal Register**

61 Fed. Reg. 5926, 5928 (Feb. 15, 1996) ...................................................... 2, 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 0:17-cv-62317-JIC

BBX CAPITAL CORPORATION, formerly
BankAtlantic Bancorp, Inc.,

        Plaintiff,

    v.

FEDERAL DEPOSIT INSURANCE
CORP., in its corporate capacity, and
BOARD OF GOVERNORS OF
THE FEDERAL RESERVE BOARD,

        Defendants.

_____/

**FDIC'S RESPONSE IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    The Federal Deposit Insurance Corporation in its corporate capacity ("FDIC") submits

this response in opposition to plaintiff BBX Capital Corporation's ("BBX") motion for summary

judgment. Respectfully, BBX's motion for summary judgment should be denied, and the

FDIC's motion for judgment on the administrative record should be granted.[1]

## INTRODUCTION

    Plaintiff BBX seeks to overturn the FDIC's final determinations where the agency

concurred in "golden parachute" payments of only twelve months' salary to five former

BankAtlantic executives: Lloyd DeVaux, Jay McClung, Susan McGregor, Lewis Sarrica, and

Valerie Toalson (collectively, the "Former Executives"). But BBX's motion provides no basis to

---

1. The FDIC adopts herein all definitions contained in the FDIC's Motion for Judgment on the
   Administrative Record and Memorandum in Support [ECF No. 41].

invalidate the FDIC's determinations.  After considering BankAtlantic Bank's ("Bank") and

BankAtlantic Bancorp's ("Bancorp") "troubled" supervisory record and the senior managerial or

fiduciary roles of each of the Former Executives, among other circumstances, the FDIC

concluded that the purpose of the golden parachute restrictions would not be furthered by

windfall payments of more than twelve months' salary as severance to executives holding

positions near the very top of the "troubled" Bank.

  BBX's primary argument is that the determinations are void altogether because BBX no

longer owns BankAtlantic bank stock.  But BBX's argument is at odds with the statutory text

and the FDIC's long-standing interpretation.  Congress granted the FDIC the authority to

"prohibit or limit, by regulation or order, ***any*** golden parachute payment."  12 U.S.C.

§ 1828(k)(1) (emphasis added).  Under Section 1828(k)(4)(A), "golden parachute" payments

include "any agreement to make any payment" when an institution is in "troubled" condition.

Here, the SPA was agreed to on November 1, 2011, when both Bancorp and the Bank were

operating in "troubled" condition.  The FDIC expressly considered that on July 31, 2012,

Bancorp closed the SPA transaction, sold all the Bank stock to BB&T, and became BBX after

decertification of the holding company by the Board of Governors of the Federal Reserve Board

("FRB").  Nothing in the statutory or regulatory text causes the payments' golden parachute

status to vanish through this later change in corporate form.  The FDIC's long-standing

interpretation, published in the preamble of the implementing regulations, makes clear that once

a payment qualifies as a prohibited golden parachute payment, it retains that status forever.  61

Fed. Reg. 5926, 5928 (Feb. 15, 1996) (if a golden parachute "payment is prohibited under the

prescribed circumstances, it is prohibited forever.").  Since the golden parachute payments here

would have been prohibited by operation of law when the SPA was executed on November 1,

2011, the FDIC appropriately found the Proposed Payments remained "golden parachute" payments, irrespective of the Bank's merger with and into BB&T.

The FDIC's evaluation of BBX's application on the merits presents several alternative grounds for affirmance.  In deciding golden parachute applications, the FDIC is afforded "substantial deference," and "may" consider any of the factors in 12 C.F.R. §§ 359.4(b)(1)-(3), none of which are controlling.  *WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 57 (D.D.C. 2015) (internal citations omitted).  The Administrative Record spanning 1351 pages shows that the FDIC faithfully applied the applicable statutory and regulatory criteria, made individual findings as to each of the Former Executives, and based the determinations concurring in payment of only twelve months' salary on discretionary standards that Congress directed the FDIC to administer.  BBX's challenge seeks to upend these factual findings as well as the FDIC's interpretation of its own regulations, and comes nowhere close to overcoming the substantial deference afforded to the FDIC's determinations in this APA Section 706(2)(A) record review case.

The FDIC acted rationally and in accordance with law in making the final determinations, and, therefore, the determinations should be upheld as a reasonable exercise of the FDIC's delegated authority.  Respectfully, BBX's motion for summary judgment seeking to overturn the FDIC's determinations should be denied.

## GOLDEN PARACHUTE RESTRICTIONS
## AND FEDERAL OVERSIGHT OF BANKING[2]

### A.    Federal Oversight of Financial Institutions in "Troubled" Condition

As the Supreme Court observed in 1947:  "Banking is one of the longest regulated and most closely supervised of public callings."  *Fahey v. Mallonee*, 332 U.S. 245, 250 (1947). When a bank begins to show signs of financial distress, this regulatory scrutiny is heightened. Under the "Prompt Corrective Action" statute, 12 U.S.C. § 1831*o*, an insured depository institution in "troubled condition" faces progressively stringent regulatory restrictions and controls over its activities.[3]  The overriding goal of prompt corrective action is to resolve insured banks in financial distress at the least possible long-term cost to the Deposit Insurance Fund.[4] These restrictions and controls include jurisdiction over institution-affiliated parties ("IAPs"), like the Former Executives here.  It was no secret to these Former Executives that if their employment at the Bank or Bancorp ended while either was in "troubled condition," there would be federal oversight over any golden parachute severance payments.  *See Branch v. United States*, 69 F.3d 1571, 1575 (Fed. Cir. 1995) (observing that an individual engaged in banking is

---

2.   The applicable statutory and regulatory background, as well as further detailed factual background, is set forth in the FDIC's memorandum in support of the FDIC's motion for judgment on the administrative record, which is incorporated by reference herein [ECF No. 41].

3.   12 U.S.C. § 1831*o*; 12 C.F.R. § 303.101(c).  An insured depository institution is in "troubled condition" when it:  (1) has a composite rating, as determined in its most recent report of examination, of 4 or 5 under the Uniform Financial Institutions Rating System (UFIRS); (2) is subject to a proceeding initiated by the FDIC for termination or suspension of deposit insurance; (3) is subject to a cease and desist order or written agreement issued by either the FDIC or the appropriate state banking authority that requires the bank to improve the financial condition of the bank; or (4) is informed in writing by the FDIC that it is in troubled condition on the basis of the most recent report of examination, report of condition, or other information available to the FDIC.  12 C.F.R. § 303.101(c).

4.   12 U.S.C. § 1831*o*; 12 U.S.C. § 1823(c).

deemed to understand that if the bank becomes insolvent or is operated in violation of laws or regulations the federal government may place the bank into receivership and no compensation will be due).[5]   Out of this context, the golden parachute restrictions arise.

### B.   FDIC Golden Parachute Restrictions When a Bank Is in "Troubled" Condition

In 12 U.S.C. § 1828(k) ("Section 1828(k)"), Congress vested the FDIC with the authority to prohibit or limit "golden parachute" payments sought to be made to IAPs of "troubled" banks or holding companies.  Under this authority, the FDIC enacted implementing regulations guiding the FDIC's discretion in approving or denying otherwise impermissible payments.  12 C.F.R. Part 359, *et seq*. (the "Golden Parachute Regulations" or "Part 359").

After the FDIC makes an initial determination that Section 1828(k) and the Golden Parachute Regulations cover the proposed payments and the institution seeking to make the payments, an institution submits an application seeking permission to make these otherwise prohibited payments under one or more of Part 359.4(a)'s three stated exceptions (the "Payment Application").[6]   As part of the Payment Application, the institution typically must certify that each of the IAPs were not "substantially responsible" for the bank's "troubled condition" and

---

5.   *Harrison v. Ocean Bank*, 614 F. App'x 429 (11th Cir. 2015) (affording deference to FDIC "golden parachute" administrative determination); *Rohr v. Reliance Bank*, 826 F.3d 1046 (8th Cir. 2016); *Batchelor v. Cornerstone Bank*, No. 5:13-CV-78-D, 2013 WL 5309578, at *3 (E.D.N.C. Sept. 19, 2013).

6.   12 C.F.R. § 359.4(a) provides three grounds by which regulators may exercise their discretion to approve otherwise prohibited golden parachute payments:  (1) If the appropriate federal banking agency, with the FDIC's written concurrence, determines that the payment or agreement is permissible; (2) If the agreement is made to hire an IAP that meets the so called "white knight exception;" or (3) If the payment is made pursuant to a change in control agreement which provides for a reasonable severance payment not to exceed twelve months salary, where the change in control did not result from the bank being placed into receivership.

they otherwise did not violate a number of federal banking laws and regulations.  12 C.F.R. § 359.4(a)(4).

In evaluating Payment Applications, FDIC guidance makes clear that golden parachute determinations should "always be made within the context that the institution in question is in troubled condition and such payments are otherwise not permitted."[7]  The golden parachute "determination to be made is discretionary with the [FDIC] and/or federal banking regulator under the law."[8]  Regulatory guidance further provides that golden parachute payments in excess of twelve months' salary are unlikely to be permitted.[9]

## FACTUAL AND PROCEDURAL BACKGROUND[10]

### A.   BankAtlantic's Troubled Condition and BB&T's Stock Purchase

Plaintiff BBX was formerly known as Bancorp, the holding company for the Bank, a federal savings bank headquartered in Fort Lauderdale.  [FDIC Summary of Investigation ("SOI"), Record Index #46, at AR001327.]  At one point, the Bank had 78 branches in south Florida.  [*Id*. at 1329.]

The Bank's condition deteriorated in the aftermath of the 2008 financial crisis.  The Bank's loan portfolio proved to be weak, which stemmed from poor credit decisions coupled with the 2008 downturn in Florida's real estate markets.  [*Id*.]  In April 2009, the Bank's primary federal regulator, the Office of Thrift Supervision ("OTS") notified the Bank that it was

---

7.  FIL-66-2010, Record Index #7, AR000154-166.

8.  *Id.* at AR000161.

9.  *Id.* at AR000163.

10.  The FDIC refers the Court to the more comprehensive factual background set forth in the FDIC's Memorandum of Law in Support of Judgment on the Administrative Record [ECF No. 41], which is incorporated by reference herein and, to the extent necessary, further summarized and supplemented below.

in "troubled" condition subject to golden parachute restrictions.  [April 30, 2009 OTS "Troubled Condition" Notice, Record Index #3, at AR00048-50.]  Regulatory scrutiny magnified.

By February 2011, the Bank and Bancorp each were operating under public consent orders (or "Orders to Cease and Desist").  [Feb. 23, 2011 Bancorp Order to Cease and Desist, Record Index #8, at AR000167-183; Feb. 23, 2011 Bank Order to Cease and Desist, Record Index #9, AR000184-207.]  Paragraph 18 of the Bancorp Order prohibited Bancorp from making any golden parachute payments unless Bancorp complied with Part 359.  [*Id.* at AR000174.]

On November 1, 2011, BB&T entered into the SPA with BBX to purchase all of the common and preferred stock of the Bank.  [Nov. 1, 2011 SPA, Record Index #12, at AR000226-643.]  In essence, BB&T took over the Bank franchise, and BBX, as successor to Bancorp, continued in other lines of business, along with standing in the shoes of Bancorp to resolve certain legacy liabilities, including the severance payments here.  The SPA transaction closed on July 31, 2012.  ECF No. 24 ¶ 46.  Following the closing of the SPA, the Bank merged into BB&T Bank, and Bancorp became BBX.

### B.      The Former Executives, the SPA, and the Proposed Payments

Article 5.7(h) of the SPA requires BBX to undertake the obligations of Bancorp or the Bank to make severance payments to certain former Bancorp and Bank executives, with BB&T reimbursing BBX in full.  [Nov. 1, 2011 SPA, Record Index #12, at AR000271; Nov. 1, 2011 Schedule 5.7(h) to SPA, Record Index #13, at AR000644.]  The SPA provides for the following payments:[11]

---

11.  The sums payable under the SPA are referred to as the "Proposed Payments."  Separately, in July 2017, BBX submitted applications to the FDIC concerning its top three executives, Alan Levan, John

- Valerie Toalson:  $1,488,180 ($995,438 severance + $492,742 stay bonus).  Ms. Toalson served as chief financial officer, making $338,039 in 2011, her last full year of employment.  [Jan. 31, 2018 Toalson Determination Letter, Record Index #47, at AR001337.]

- Lloyd DeVaux:  $1,319,114 (severance).  Mr. DeVaux served as chief operating officer until the BB&T transaction.  Mr. DeVaux's salary in 2011, his last full year of employment, was $440,016.  [Jan. 31, 2018 DeVaux Determination Letter, Record Index #39, at AR001284.]

- Jay McClung:  $743,258 (severance).  Mr. McClung served as chief risk officer.  In 2011, Mr. McClung's last full year of employment, his annual salary was $373,217.  [Jan. 31, 2018 McClung Determination Letter, Record Index #41, AR001297.]

- Lewis Sarrica:  $920,451 (severance).  Mr. Sarrica was employed as chief investment officer.  His salary in 2011, his last full year of employment, was $318,352.  [Feb. 9, 2018 (Corrected) Sarrica Determination Letter, Record Index #49, at AR001350.]

- Susan McGregor:  $893,713 (severance).  Ms. McGregor worked as chief talent officer, with a $296,560 annual salary in 2011, her last full year of employment.  [Jan. 31, 2018 McGregor Determination Letter, Record Index #43, at AR001311.]

SPA, Sch. 5.7(h), Record Index #13, AR000644.

C.    The FDIC's Administrative Process

BBX sought to obtain regulatory approval for making the Proposed Payments through a multi-step process, which is documented in the FDIC's certified Administrative Record.  ECF No. 31.  BBX applied to the FDIC and FRB in September 2013, requesting permission to make the Proposed Payments.  [ECF No. 24-3 to 8, Sept. 16, 2013 Applications, Record Index #22-26, AR000719-759.]  The applications were filed in the midst of litigation brought by the Securities and Exchange Commission against BBX and its CEO for fraud, *Securities and Exchange Commission v. BankAtlantic Bancorp, Inc. and Alan Levan*, 12-cv-60082 (S.D. Fla) ("SEC

---

Abdo, and Jarrett Levan.  The FDIC issued final determinations concerning these applications in August 2018.

Litigation").  In response to a request from the FDIC, BBX made an additional submission for each application to the agencies in 2014.  [March 7, 2014 Supplements, Record Index #32-36, AR000779-1186.]  In 2017, after the SEC Litigation was resolved in BBX's favor, BBX supplemented its applications.  [July 13, 2017 Supplement, Record Index #38, AR001266-1279.]

In November 2017, BBX commenced this lawsuit, initially seeking to compel the FDIC and FRB to act on the applications.  ECF No. 1.  The FDIC issued its final determinations on the applications on January 31, 2018, concurring in payments equivalent to twelve months salary for each of the Former Executives, subject to the approval of the FRB, and affirming that BBX and the Proposed Payments are subject to Section 1828(k) and Part 359 (the "FDIC Final Determinations").  [Jan. 31, 2018 FDIC Final Determinations, Record Index #39, 41, 43, 47, 49, AR001280-85, AR001293-98; AR001307-1312; AR001333-38; AR001346-51.]  These determinations are also documented in the SOIs, approved by the FDIC's Deputy Regional Director, Atlanta Regional Office, under delegated authority.  [Jan. 31, 2018 SOIs, Record Index #40, 42, 44, 46, 48, AR001286-92; AR001299-1306; AR001313-1319; AR001326-1332; AR001339-1345.]

BBX filed an amended complaint challenging the January 31, 2018 FDIC Final Determinations in March 2018, and those determinations are ripe for judicial review.  ECF No. 24.

## STANDARD OF REVIEW

The January 31, 2018 FDIC Final Determinations are final agency action reviewable under section 706(2)(A) of the Administrative Procedure Act ("APA").  Under Section 706(2)(A), a final agency decision should be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008) ("In a case involving review of a

final agency action under the APA . . . , the standard set forth in Rule 56(c)" for summary judgment "does not apply because of the limited role of a court in reviewing the administrative record.").

## ARGUMENT

**I.    THE FDIC'S DETERMINATIONS THAT THE GOLDEN PARACHUTE RESTRICTIONS APPLY TO THE PROPOSED PAYMENTS ARE PROPER.**

As set forth in the FDIC's Memorandum in Support of its Motion for Judgment on the Administrative Record (ECF No. 41 at 8-10), the FDIC's conclusion that the Proposed Payments are subject to regulation under Section 1828(k) and Part 359 is rational and consistent with the text and purpose of Section 1828(k) and Part 359.  The FDIC's determinations on these points are also documented in the SOIs prepared in connection with the determinations.  [AR001286-92; AR001299-1306; AR001313-1319; AR001326-1332; AR001339-1345.]  The FDIC considered the terms of the SPA, and concluded that the payments provided for unearned compensation, "contingent on" termination and found that the Proposed Payments fell squarely within the ambit of regulation as "golden parachutes" payments.  Moreover, the FDIC's determination that the sale of the Bank's stock to BB&T did not cause the golden parachute restrictions to disappear is supported by the record.

Under Section 1828(k) "golden parachute" payments include any "agreement to make any payment" after an insured depository institution or "covered company" is declared in a "troubled condition."  12 U.S.C. § 1828(k)(5)(D) defines "covered company" to include "any depository institution holding company . . . or any other company that controls an insured depository institution."  The SPA was agreed to on November 1, 2011, when both the Bank and Bancorp were operating in "troubled" condition, and when it is undisputed that Bancorp was a "covered company."  Against this backdrop, the FDIC found that Bancorp's "covered company"

status as to the Proposed Payments extended to BBX, as Bancorp's successor.  *See Hill v. Commerce Bancorp*, *Inc.*, 2012 WL 694639 at *5-7 (D.N.J. Mar. 1, 2012) (holding that the golden parachute restrictions applied to entity that acquired a troubled insured depository institution even though that entity itself was not troubled).  Nothing in Section 1828(k) or Part 359 provides that a payment meeting the definition of a golden parachute loses that status, where, as here, the bank later merges with and into another bank.

BBX argues that the Proposed Payments cannot be subject to regulation because when the SPA closed on July 31, 2012, Bancorp (now BBX) sold off its Bank stock, no longer controlled the Bank and ceased to be a "covered company."  ECF No. 44 at 11.  Not so.  The text of Section 1828(k) refutes BBX's interpretation.  Section 1828(k) contemplates application of the golden parachute restrictions, even when an institution changes form.  Congress, for instance, instructs the FDIC to consider whether an IAP is substantially responsible for "the insolvency of the depository institution or covered company" or "the appointment of a conservator or receiver for the depository institution." 12 U.S.C. § 1828(k)(2)(B)(i),(ii).  The statute thus clearly contemplates that the agencies will be evaluating "golden parachute" applications in situations where the holding company no longer owns a bank (such as because it is in receivership).  BBX's interpretation, under which the agencies would have no authority to review payments where a holding company no longer owns bank stock, cannot be squared with Section 1828(k)'s text or structure.

BBX's reading would turn the golden parachute restrictions on their head.  Under BBX's interpretation, banking executives would be able to receive windfall golden parachute payments without restriction when a bank became so troubled it fell into receivership, since the holding company would no longer have control of the bank.  BBX's construction would also allow

bankers to engineer change in control transactions as safe harbors to circumvent the golden parachute restrictions.  "An interpretation according to which an entity's "troubled" status is destroyed by its acquisition would eviscerate the FDIA's restrictions by providing a safe harbor to officers and directors seeking to activate their golden parachutes through acquisition by another institution." *Hill,* 2012 WL 694639 at *5.  Such results would render the golden parachute restrictions meaningless.

Even if BBX were presently not considered a "covered company," the golden parachute restrictions still would apply to the Proposed Payments because the troubled Bancorp was indisputably a "covered company" when the SPA was executed.  Section 1828(k) defines golden parachute payments as "any payment (or agreement to make any payment) in the nature of compensation by any insured depository institution or covered company for the benefit of any [IAP]" where such payments are received on or after the date the institution is designated to be in "troubled condition."  When the SPA was signed, the Bank was an operating insured depository institution and Bancorp was an operating "covered company," each were in "troubled condition." The Proposed Payments necessarily would be made "after the date on which" the Bank and Bancorp were deemed to be in troubled condition

The FDIC's findings rest on two independent grounds to support the agency's assertion of jurisdiction:  (1) that BBX, as successor, retains Bancorp's "covered company" status with respect to the Proposed Payments; and (2) in the alternative, even if BBX is no longer considered a "covered company," the Proposed Payments remain subject to regulation, given that they were agreed to when Bancorp was a "covered company" operating in "troubled condition."  This Court should defer to the FDIC's long-standing interpretation, published in the preamble of the implementing regulations, that once a payment qualifies as a prohibited golden parachute

payment, it retains that status forever.  61 Fed. Reg. 5926, 5928 (Feb. 15, 1996) (if a golden

parachute "payment is prohibited under the prescribed circumstances, it is prohibited forever.");

*see City of Arlington, Tx. v. FCC*, 569 U.S. 290 (2013) (extending *Chevron* deference to an

agency's interpretation of its own jurisdiction"); *Talk Am. Inc. v. Mich. Bell Tele. Co.*, 131 S.Ct.

2254, 2261 (2011) (deferring to agency's interpretation of its regulations, "even in a legal brief,

unless the interpretation is plainly erroneous"); *Long Island Care at Home, Ltd. v. Coke*, 551

U.S. 158, 165 (2007) (upholding Department of Labor interpretation of a defined term in the Fair

Labor Standards Act that filled the gap in the statute).

## II.    THE FDIC BASED ITS FINAL DETERMINATIONS ON PERMISSIBLE FACTORS, CONSIDERING EVIDENCE SUBMITTED TO THE AGENCY.

On the merits, Part 359.4(b)(1)-(3) sets forth non-exclusive criteria for the FDIC to

consider:

(1)    Whether, and to what degree, the IAP was in a position of managerial or fiduciary responsibility;

(2)    The length of time the IAP was affiliated with the insured depository institution or depository institution holding company, and the degree to which the proposed payment represents a reasonable payment for services rendered over the period of employment; and,

(3)    Any other factors or circumstances which would indicate that the proposed payment would be contrary to the intent of section 18(k) of the Act or this part.

Contrary to BBX's claims, there is nothing arbitrary or capricious about the FDIC's

administrative findings, any one of which is sufficient to support upholding the determinations

here.

### A.    The FDIC Considered the Certification Factors.

As a threshold matter, the golden parachute restrictions require applicants to certify that

the IAP complied with law and was not responsible for the institution's troubled condition.  12

C.F.R. § 359.4(a)(4) directs the agency to consider such certifications at the outset, before the

13

agency proceeds with consideration of other evaluative criteria.  *See WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 54 (D.D.C. 2015)  (agency should first consider applicant certifications prior to evaluating applications on the merits).  BBX incorrectly argues that the FDIC's Final Determinations should be overturned because the FDIC "ignored" evidence submitted pertaining to the certification factors.  ECF No. 44 at 16.  As a starting point, BBX's differing view as to how Part 359 should be applied overlooks the substantial deference afforded to the FDIC's interpretation of its own regulations.  *See, e.g.*, *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 397 (2008); *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 328 (2008).  Moreover, the FDIC reviewed each of BBX's certifications regarding the Former Executives, and made independent assessments of the Former Executives' involvement.  [Jan. 31, 2018 FDIC Final Determinations, Record Index #39, 41, 43, 47, 49, AR001280-85, AR001293-98; AR001307-1312; AR001333-38; AR001346-51].  The FDIC, in fact, credited BBX's certifications, insofar as the agency did not cite any of them as reason to deny the applications outright, and went on to evaluate the applications on the merits.  The FDIC's actions meet APA requirements.  *See Confederated Tribes of Grand Ronde Cmty. of Oregon v. Jewell*, No. CV 13-849 (BJR), 2014 WL 7012707, at *14 (D.D.C. Dec. 12, 2014) ("[T]he Secretary did all that the APA requires—she considered the 1933 letter and 1924 statement as well as other evidence and briefly explained why she remained persuaded that the totality of evidence tipped in favor of finding that the Cowlitz Tribe was under federal jurisdiction.").

**B.      BBX Does Not Challenge the FDIC's Other Findings, Which Provide Independent Grounds to Support the Final Determinations.**

Even if BBX were correct that the FDIC overlooked some evidence (which it never identifies) in applying the 12 C.F.R. § 359.4(a)(4) certification factors, there would be no basis to set aside the FDIC Final Determinations.  This is because the FDIC is afforded "substantial

deference," and "may" consider any of the factors in 12 C.F.R. §§ 359.4(b)(1)-(3), none of which are controlling.  *WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 57 (D.D.C. 2015) (citing *Knyal*, 2003 WL 26465939, at *16*)*; Air Line Pilots Ass'n, Int'l v. DOT*, 791 F.2d 172, 177-78 (D.C. Cir. 1986) (noting that agency has discretion to decide the relative weight to give to the relevant considerations).  Because the FDIC identified 12 C.F.R. §§ 359.4(b)(1), (2), and (3) as each independently supporting the determinations, and BBX has failed to challenge the basis for the FDIC's conclusions with respect to these factors, each of them provides independent grounds for affirmance of the FDIC Final Determinations.

First, BBX does not challenge the FDIC's finding that the Former Executives held positions of  "managerial or fiduciary responsibility" at the Bank under 12 C.F.R. § 359.4(b)(1), which independently supported the final determinations.  [AR001284, AR001297; AR001311, AR001337, AR001350]; *see also WMI Liquidating Tr.*, 110 F. Supp. 3d at 55.  The Former Executives' job titles demonstrate the reasonableness of this finding.  Valerie Toalson served as chief financial officer, Lloyd DeVaux worked as chief operating officer, Jay McClung served as chief risk officer, Susan McGregor worked as chief talent officer, and Lewis Sarrica worked as chief investment officer.  The FDIC correctly found the high degree of managerial or fiduciary responsibility for each of the Former Executives supported the agency's determinations here.

Second, the FDIC found the Former Executives' length of affiliation with Bancorp or the Bank and the reasonableness of the payment amounts under 12 C.F.R. § 359.4(b)(2), by itself, supported the final determinations.  These findings are reasonable, based on the FDIC's record showing that in their last full year of employment, Ms. Toalson made $338,039, Mr. DeVaux made $440,016, Mr. McClung made $373,217, Mr. Sarrica made $318,352, and Ms. McGregor made $296,560. *See WMI Liquidating Tr.*, 110 F. Supp. 3d at 56.  To this end, the FDIC found

15

that each of the Former Executives had been well compensated while at the bank, "and while one

year's salary for severance is appropriate, [two or three] years is not."  [AR001291; AR001304;

AR001318; AR001331; AR001344]

Third, the FDIC found approval of payment in excess of twelve months' salary to be

"contrary to the intent" of Section 1828(k) and Part 359.  12 C.F.R. § 359.4(b)(3).  The FDIC

determined that the aims of Section 1828(k) would not be served by awarding windfall payments

to the Former Executives for their work at the "troubled" bank.  [AR001285, AR001297-98,

AR01305, AR001312, AR001338, AR001351]

The FDIC's findings under 12 C.F.R. §§ 359.4(b)(1)-(3) independently support the FDIC

Final Determinations.  Under the APA, agency action will be upheld "as long as all the necessary

factors were considered, and provided that the statement of reasons given permits a 'rational

understanding of the basis for [the] decision."  *Lorion v. NRC*, 785 F.2d 1038, 1042-43 (D.C.

Cir. 1986) (internal citations omitted); *Quality Auto. Servs., LLC v. Pension Ben. Guar. Corp.*,

960 F. Supp. 2d 211, 221 (D.D.C. 2013) (holding that agency's two-page determination

complied with the "basic requirement that it provide a brief statement setting forth the reasons

for its decision" even though explanation was "far from a model of detail and clarity" and noting

that "agency explanations that the D.C. Circuit has branded too brief seem to be limited to single,

conclusory sentences").[12]

---

12. *See also Natural Res. Def. Council v. Nat'l Marine Fisheries Serv.*, No. 12-CV-0938 (KBJ), 2014
    WL 5148407, at *19 (D.D.C. Oct. 14, 2014) (noting that agency action would be arbitrary and
    capricious if agency "entirely failed to consider an important aspect of the problem"); *Ctr. for Auto
    Safety v. Peck*, 751 F.2d 1336, 1342 (D.C. Cir. 1985) (noting that the "scope of review under the
    'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of
    the agency").

III.    THE FDIC ADVANCES A CONSISTENT INTEPRETATION OF PART 359.

Apart from its attacks on the FDIC's jurisdiction, BBX offers no arguments that call into question the FDIC's application of the Change-in-Control Exception in 12 C.F.R. § 359.4(a)(3), which limits the amount that may be approved to twelve months' salary.  Instead, BBX directs its arguments at the FDIC's additional and independent reason for approving the same amount under the Regulator's Concurrence Exception, at 12 C.F.R. § 359.4(a)(1).  The Regulator's Concurrence Exception provides discretion to approve otherwise impermissible golden parachute payments if "the appropriate federal banking agency, with the FDIC's written concurrence, determines that the payment or agreement is permissible."  12 C.F.R. § 359.4(a)(1).  In analyzing the Payment Applications under this Exception, the FDIC considered the 12 C.F.R. § 359.4(b) criteria, including evaluating the managerial or fiduciary responsibility of the IAPs, the reasonableness of the payment amounts, and the purposes of the golden parachute restrictions.  Although the Regulators' Concurrence Exception contains no express twelve-month limitation as in the Change-in-Control Exception, the FDIC determined that the circumstances supported concurring in only twelve months' salary under the Regulator's Concurrence Exception as well.  [AR001291; AR001304; AR001318; AR001331; AR001344.]  This conclusion is supported by agency guidance, FIL-66-2010, *Guidance on Golden Parachute Applications,* which notes that the Regulator's Concurrence Exception should not be viewed as permitting golden parachute payments in excess of twelve months' salary.

BBX's argument that restricting payment to twelve months' salary is arbitrary because there is no specific limitation in the text of the Regulators' Concurrence Exception finds no support in the case law.  ECF No. 44 at 13; *WMI Liquidating Tr. v. Fed. Deposit Ins. Corp*., 110 F. Supp. 3d 44, 56 (D.D.C. 2015)  (noting it should "seemingly be rare" for the FDIC to approve payment under the Regulators' Concurrence Exception where "it would not qualify for the

17

exceptions set forth in 12 C.F.R. §§ 359.4(a)(2), (3)").  Moreover, the FDIC's interpretation is reasonable.  Here, the FDIC, in its discretion, concluded that because the Change-in-Control Exception flatly prohibits approval for payments in excess of twelve months' salary, BBX should not be able to circumvent this restriction by seeking additional sums through the Regulators' Concurrence Exception.  The FDIC administered the Regulator's Concurrence Exception here as intended, reading it consistently with Part 359 as a whole and applying it rationally with respect to each Former Executive.  *See Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 731 F. Supp. 2d 15, 22 (D.D.C. 2010) ("[S]o long as the agency considered the relevant factors and articulated an explanation establishing a rational connection between the facts found and the choice made, the court will not substitute its judgment for that of the agency."); *Ctr. for Auto Safety v. Peck*, 751 F.2d 1336, 1370 (D.C. Cir. 1985) (noting that reversal is appropriate "only when there is such an absence of overall rational support as to warrant the description 'arbitrary or capricious'").

## IV.   THE FDIC'S REQUEST THAT BB&T ALSO SUBMIT AN APPLICATION IS BASED ON A CONSISTENT APPLICATION OF THE GOLDEN PARACHUTE RESTRICTIONS.

BBX next claims that the agency failed to articulate an adequate basis for its requirement that BB&T submit an application before reimbursing BBX for any of the Proposed Payments the agencies have already approved.  ECF No. 41 at 18.  But there is ample basis for requiring separate applications from BB&T here.  As set forth in the FDIC's memorandum of law, the Proposed Payments are golden parachute payments, which under Section 1828(k) and Part 359, are barred by federal law absent regulatory approval.  Any payment from BB&T reimbursing BBX for a golden parachute payment similarly falls within the definition of a "golden parachute," as it is made "for the benefit of any current or former IAP."  12 C.F.R. § 359.1(f).  In the event that BBX requested that BB&T make the Proposed Payments directly to the Former

Executives rather than receive reimbursement from BB&T for making the Proposed Payments to them, the FDIC's requirement that BB&T submit separate applications is reasonable and consistent with the FDIC Final Determinations.

## V.   THE FDIC'S ACTIONS COMPORTED WITH DUE PROCESS.

BBX pleads in Count IV that the FDIC Final Determinations violate constitutional due process.  ECF No. 24 ¶¶ 192-193.  Contrary to BBX's contentions, the FDIC's golden parachute restrictions well exceed constitutional bounds.

Due process is satisfied by the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (internal quotations omitted); *Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*, 53 F.3d 1395, 1402 (4th Cir. 1995) (due process does not require formal hearing in FDIC administrative context).  Here, BBX received both adequate notice and a meaningful opportunity to be heard.  It submitted golden parachute applications to the FDIC along with two supplements, which presumably included all of the information and material BBX desired to be considered in the FDIC's decision making process.  The FDIC, in turn, presented ample detail explaining its determinations.  The FDIC's First Application Determinations comport with due process.  *Doolin Sec. Sav. Bank, F.S.B.*, 53 F.3d at 1402.

## VI.   BBX'S DELAY CLAIM AGAINST THE FDIC IS MOOT.

As set forth in the FDIC's memorandum of law in support of judgment on the administrative record at 19, Count III seeking to compel agency action is now moot as to the FDIC, as the agency issued final agency determinations on these applications on August 9, 2018: the FDIC determined it would not concur with a decision by the FRB to approve BBX's request to make any "golden parachute" payment to Alan Levan and John Abdo, and, subject to the FRB's approval, concurred in payment of twelve months' salary to Jarrett Levan.

## CONCLUSION

For the foregoing reasons, BBX's motion for summary judgment should be denied.

Summary judgment should be granted in favor of the FDIC on Counts I, II, and IV of the

Amended Complaint; Count III of the Amended Complaint should be dismissed under Rule

12(b)(1) as moot; and Count V of the Amended Complaint should be dismissed for failure to

state a claim.

Dated:        September 13, 2018                        Respectfully submitted,


                                        By:   /s/ Erik Bond_____
                                              ERIK BOND
                                              (Special Bar ID: A5502072)
                                              Counsel, Corporate Litigation Unit
                                              erbond@fdic.gov
                                              SARAH E. FAUST
                                              (Special Bar ID: A5502416)
                                              Attorney, Corporate Litigation Unit
                                              sfaust@fdic.gov

                                              The Federal Deposit Insurance Corporation
                                              3501 N. Fairfax Drive, D-7026
                                              Arlington, VA 22226
                                              Telephone: (703) 562-6461
                                              Fax: (703) 562-2477


                                              *Attorneys for Defendant*
                                              *Federal Deposit Insurance Corporation*


## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.


                                              /s/Erik Bond_____
                                              Counsel, FDIC Legal Divison